UNITED STATES of America, Plaintiff,

v.

METROPOLITAN DISTRICT
COMMISSION, et al.,
Defendants.

CONSERVATION LAW FOUNDATION
OF NEW ENGLAND, INC., Plaintiff,

v.

METROPOLITAN DISTRICT
COMMISSION, et al.,
Defendants.

Civ. A. Nos. 85–0489–MA, 83–1614–M.

United States District Court,
D. Massachusetts.

April 1, 1991.

Andrew S. Hogeland, Asst. U.S. Atty., Karen F. Green, Sp. Asst. U.S. Atty., Hale & Dorr, Boston, Mass., Joseph J. McGovern, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Anne Crocker Phillips, Ropes & Gray, Boston, Mass., for Compliance Monitor.

E. Michael Sloman, Asst. Atty. Gen., Government Bureau, Boston, Mass., for State defendants.

Laura Steinberg, Sullivan & Worcester, Boston, Mass., for Boston Water & Sewer Authority.

Catherine L. Farrell, Gen. Counsel, John Stevens, Foley, Hoag & Eliot, Boston, Mass., for Massachusetts Water Resources Authority.

Peter L. Koff, Boston, Mass., for City of Quincy.

Bradford S. Gentry, Samuel Hoar, Jeffrey C. Bates, Goodwin, Proctor & Hoar, Boston, Mass., for Conservation Law Foundation of New England.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter is before me on two motions filed by the City of Boston and the Boston Redevelopment Authority, and one motion filed by the United States. The first two motions were triggered by my *Memorandum and Order*, February 25, 1991, 757 F.Supp. 121. That order imposed a ban on certain new sewer hook-ups to the sewer system of the Massachusetts Water Resources system. The background and reasons underlying that order are fully set out in my memorandum and will not be repeated here. The City and BRA move: (1) to intervene in this action, and (2) to clarify and/or modify my order. The motion by the United States seeks to clarify or expand the ban to include generally industrial hook-ups that discharge less than 2,000 gallons per day. Oral argument was heard on March 28, 1991. For the reasons stated below, the City's motions are denied and the motion of the United States is allowed.

### I.

■ Intervention is governed by Fed.R.Civ.P. 24. Rule 24(a)(2) provides for intervention of right when the putative intervenor has a direct, substantial and legally protectable interest in the subject of the action and the disposition of that action may adversely affect the ability to protect that interest. *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir.1989). The interests asserted here are the need for affordable housing, and new large-scale commercial projects which would provide revenues as well as the basis for the continuing development of the City so as to allow it to maintain the critical services to which its citizens are entitled.

The City's interests are important and legitimate, but they do not have a right to intervene based on the unfortunate economic effects of the ban. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir.) (*en banc*), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984).

The City further argues that, as long as the ban is in effect, there are innumerable and largely powerless persons adversely affected. The difficulty with this approach is that *every* MWRA community is affected. Developers, contractors and their employees are affected. Providers of support services are affected. People waiting for affordable housing are affected. Unfortunately, none of the individuals or groups affected have a legal right to continue or to pursue the activity which *increases* the sewage discharges into Boston Harbor.

■ Permissive intervention would be appropriate if the City's claim or defense and the main action had a question of law or fact in common. There are no such questions presented here. Indeed, the City states its support and encouragement of the Boston Harbor clean-up. Its interests are consistent with the objective of this action. Moreover, its interests are adequately protected by the Commonwealth of Massachusetts which has already argued the adverse economic consequences in opposing the request for the ban. *Morgan v. McDonough*, 726 F.2d 11, 14 (1st Cir.1984); *Moosehead Sanitary District v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979).

### II.

■ The motion to clarify and/or modify the ban does not require an extended discussion. First, I believe the present order is authorized pursuant to the Federal Clean Water Act, 33 U.S.C. § 1342(h). Secondly, there are exemptions in the present order which recognize the effect on the health and safety of individuals in need.

But, the City argues, it occupies a unique position in this litigation. In the context of this motion, the City's uniqueness cuts two ways. As the largest population center within the MWRA service area, the effects of the ban may visit more heavily. At the same time, the City contributed and continues to contribute to the pollution of the harbor. It makes very little sense to carve

out an exception for the City which adds even more pollution to the harbor. Moreover, were the ban removed or relaxed for Boston, fairness would dictate consideration of similar petitions from other communities and individuals. The success of the cleanup hinges on the faithful adherence to the schedule, a schedule which this Court must maintain.

### III.

■ The motion of the United States is to modify, clarify and/or expand the ban to include industrial discharges of less than 2,000 gallons per day. All industrial sources, including those that discharge less than 2,000 gallons per day are required to obtain permits from the Department of Environmental Protection, *see* 314 CMR § 7.00, and the MWRA. *See* 360 CMR § 10.051. The United States claims it was its intention to include all sources which required permitting in its original motion. Industrial discharges, even in amounts less than 2,000 gallons per day, can contribute significant pollution to the harbor.

The Commonwealth opposes this motion on the grounds that my February 21, 1991 order is clear and that there is no reason to expand the moratorium. The supporting affidavit of the Secretary of Environmental Affairs details the Administration's efforts to solve this problem. Counsel also reminded the Court at hearing that a new administration was in place and needed more time.

The record is clear to anyone following this litigation. On May 15, 1990, the previous Governor filed a bill authorizing transfer of the Walpole site to the MWRA. On June 6, 1990, the Commonwealth stated its firm commitment to that legislation and assured the Court it would do everything in its power to assure its passage. In July, 1990, the Legislature amended 1991 budget legislation which precluded locating a landfill at either Walpole or Rowes Quarry. That legislation was vetoed by the Governor. In December, 1990, the Legislature voted down the original bill. The bottom line is that there is no bill before the Legislature, no feasible proposals and no con-

crete progress. The Commonwealth is no closer to a solution today than it was on January 3, 1991, as far as I can tell. With this record, further delay is neither warranted nor deserved.

### IV.

In accordance with the above, the motion to intervene is denied and the motion to clarify and/or modify my order of February 25, 1991 is denied. The motion of the United States to expand the ban to industrial sources is allowed.

SO ORDERED.

### ORDER

Upon consideration of the Motion of the United States to Clarify and/or Expand the Court's February 25, 1991 Order to Include Certain Sources Which Will Discharge Less Than 2,000 Gallons Per Day, and the exhibits and memoranda of the parties in connection therewith, it is hereby ORDERED as follows:

In addition to the steps required by the February 25, 1991 Order, until the termination of the sewer ban established by that Order, and with respect to the Massachusetts Water Resources Authority's Sewage System as defined by that Order:

(A) No sewer connection permits shall be issued by Daniel Greenbaum, as he is Commissioner or the Department of Environmental Protection or by Brian Donahoe, as he is Director of the Division of Water Pollution Control, to sources not discharging to the Sewage System as of the date of this Order, including sources proposing to discharge less than 2,000 gallons per day; and

(B) No permits shall be issued by the Massachusetts Water Resources Authority pursuant to 360 CMR § 10.051, to sources not discharging to the Sewage System as of the date of this Order, including sources proposing to discharge less than 2,000 gallons per day.